UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


JAMES W. HACKNEY                                                    PLAINTIFF




v.                                          CIVIL ACTION NO. 3:12-CV-00170-CRS




THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY, ET AL.                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on the following motions:

1) a motion to dismiss or, in the alternative, a motion for summary judgment
   (DN 81) filed by Defendant Lincoln National Life Insurance Company
   ("Lincoln");

2) a motion to strike exhibits and memorandum related to Lincoln's Motion to
   Dismiss (DN 92) filed by Plaintiff James W. Hackney ("Hackney");

3) a motion for reconsideration (DN 101) of the magistrate judge's Order on
   Motion for Discovery (DN 97) filed by Hackney;

4) a motion for leave to file a surreply brief (DN 102) in opposition to Lincoln's
   Motion to Dismiss filed by Hackney; and

5) a motion for summary judgment (DN 107) filed by Defendant Vascular
   Solutions, Inc. ("VSI").

For the reasons set forth below, the Court will:

1) hold the motion to dismiss or, in the alternative, motion for summary
   judgment in abeyance pending receipt of Hackney's response thereto;

2) deny the motion to strike exhibits and memorandum;

3) deny the motion for reconsideration;

4) deny the motion for leave to file a surreply brief; and

5) grant the motion for summary judgment.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed. Defendant VSI is a Minnesota-based company engaged in the development and sale of medical devices designed for use in coronary and peripheral vascular procedures. In June 2005, Hackney began working for VSI as an Associate Account Manager, in which capacity he was responsible for obtaining new business by direct selling into hospital catheter labs and hospital interventional radiology labs in Kentucky, Southern Indiana, and Southern Ohio. Over the course of the next several years, Hackney was gradually promoted until he finally assumed the position of Director of Marketing for Catheters on July 1, 2010. As Director of Marketing, Hackney created market feasibility plans in consultation with VSI sales representatives and engineers, in addition to reviewing and drafting marketing literature such as brochures and instructional documents.

The terms of Hackney's employment as Director of Marketing were governed by an Employment Agreement ("Agreement") between Hackney and VSI. Pursuant to the Agreement, Hackney was an "at-will" employee to be paid an annualized salary of $178,000. Section 8 provided that Hackney would be entitled to severance pay in the event that he was terminated for any reason other than "Violating Conduct," which was defined to include "a violation of the Company's written Code of Conduct…, falsely reporting factual information to management, job abandonment, or refusal to follow specific direction from management." Additionally, Section 4(e) provided that Hackney would be entitled to participate in any benefit plans established by VSI's Board of Directors. One of these plans was VSI's Salary Continuation Plan (the "Plan"), pursuant to which employees were entitled to short-term disability benefits in the event they became "Totally Disabled." According to the Plan, an employee was considered "Totally Disabled" if he was unable to perform the "main duties of

[his] regular occupation… due to sickness or injury…" (Salary Continuation Plan, DN 116-4, at 8). Although VSI paid all benefits under the Plan out of its general assets,[1] employees were not required to pay a premium in order to be eligible for benefits.

Because it did not have sufficient human resources personnel, VSI entered into an Advice to Pay Agreement with Defendant Lincoln whereby Lincoln agreed to administer VSI's short-term disability benefits according to the terms of the Plan. Specifically, Lincoln agreed to review, investigate, and ultimately determine the merits of employees' claims for benefits under the Plan. Importantly, however, Lincoln's determinations were merely advisory and VSI retained the exclusive authority to approve or deny an employee's claim.

After several years of suffering from hypoparathyroidism, Hackney notified VSI on October 6, 2010, that he believed his condition had permanently disabled him such that he could no longer perform the necessary functions of his job. Shortly thereafter, he submitted a claim for short-term disability benefits pursuant to the Plan. Based on its review of his claim, Lincoln recommended to VSI that it approve Hackney's claim for approximately four weeks, which VSI ultimately approved. In a letter dated October 14, 2010, Lincoln informed Hackney that VSI had approved his claim for benefits extending through November 2, 2010, and that, in order to qualify for benefits beyond that date, he would be required to submit additional medical evidence demonstrating that he remained disabled. However, Lincoln emphasized that "[a] note from your physician without any supporting medical evidence may not be sufficient to consider further benefits." (DN 121 at 20).

---

[1] Because VSI pays its disability benefits out of its general assets, it is undisputed that the Plan qualifies as a "payroll practice" exempted from the requirements of the Employee Retirement and Income Security Act under 29 C.F.R. § 2510.3-1(b)(2).

On November 3, 2010, Hackney failed to report for work. Believing that he remained permanently disabled, Hackney instead sought additional disability benefits pursuant to the Plan. In support of his claim, Hackney submitted the following medical records:

1) Medication List;
2) Office Visit Note from Dr. Tom Childress dated July 5, 2010;
3) Office Visit Note from Dr. Paul Goodlett dated September 2, 2010;
4) Office Consult from Dr. Tom Childress dated September 27, 2010;
5) Radiology Report dated September 30, 2010;
6) Office Visit Note from Dr. Paul Goodlett dated September 30, 2010;
7) Office Visit Note with Dr. Paul Goodlett dated October 5, 2010;
8) Office Visit Note from Dr. Tom Childress dated October 6, 2010;
9) Letter from Dr. Paul Goodlett dated October 6, 2010;
10) Attending Physician's Statement from Dr. Paul Goodlett dated October 11, 2010;
11) Letter from Dr. Lary Fineman dated October 24, 2010.

Based on its review of these records, Lincoln recommended that VSI deny Hackney's claim for extended benefits on the grounds that he had failed to establish that he remained "Totally Disabled" within the meaning of the Plan. In accordance with Lincoln's recommendation, VSI determined that Hackney was ineligible to receive benefits beyond November 2, 2010, and accordingly denied his claim for extended benefits.

On March 2, 2011, Hackney appealed VSI's denial of his claim for extended benefits. After considering his appeal, Lincoln recommended that VSI deny the appeal on the grounds that the medical documentation failed to support his claim that he remained Totally Disabled. In accordance with Lincoln's recommendation, VSI denied Hackney's appeal. On March 30, 2011, Lincoln informed Hackney via letter that VSI had decided to deny his appeal. In the letter, Lincoln explained that the medical records submitted by Hackney established only that Hackney was restricted from prolonged standing, walking, climbing, pushing, pulling, bending and lifting. Because such tasks were not necessary functions of Hackney's position as Director of Marketing,

Lincoln explained that Hackney failed to meet the definition of Totally Disabled as that term was defined in the Plan.

During the appeal process, VSI attempted to contact Hackney several times in order to determine whether he planned on returning to work or whether he would require accommodations in order to do so. On January 18, 2011, Hackney responded that he was still unable to return to work and would therefore need additional time off work. Despite the fact that Hackney's FMLA leave had expired three weeks earlier, VSI agreed to hold his position open until April 20, 2011, at which time he would be required to return to work.

On April 20, 2011, Hackney failed to report to work. On April 21, 2011, VSI notified Hackney that it was terminating his employment effective May 12, 2011. As grounds for termination, VSI explained that Hackney had failed to respond to VSI's request that he identify accommodations that could make it possible for him to return to work. Given Hackney's refusal to return to work despite VSI's attempt to accommodate him, VSI stated that it considered his actions to constitute job abandonment.

## PROCEDURAL HISTORY

On March 6, 2012, Hackney filed the present action against VSI and Lincoln in Jefferson County Circuit Court. On March 28, 2012, Defendants removed the action on the basis of diversity jurisdiction. (DN 1). After extensive discovery,[2] Hackney filed an Amended Complaint (DN 80) asserting the following causes of action:

---

[2]      During discovery, a dispute arose concerning the proper scope of Plaintiff's deposition examination of certain Lincoln representatives. Specifically, the parties were unable to agree about whether Plaintiff should be permitted to: 1) inquire regarding Lincoln's long-term disability benefits, policies, and procedures; or 2) depose individuals who were not involved in the handling, review, or denial of Hackney's disability benefits. On November 7, 2012, VSI moved for a protective order (DN 36) restricting the scope of Hackney's depositions, which Lincoln thereafter sought to expedite (DN 48). Ultimately, the magistrate judge granted the motion for protective order on the grounds that "None of [Hackney's] claims allege any improper denial of workers compensation or long term disability benefits, nor would any evidence of whether an award of workers compensation or long term disability benefits be admissible as evidence in the trial of this action." (Order, DN 54, at 2). Accordingly, the magistrate

   i. against VSI:

    a. breach of contract based on VSI's alleged violation of the Agreement;

    b. breach of contract based on VSI's alleged violation of the Plan;

    c. breach of the implied covenant of good faith and fair dealing with respect to the Agreement and the Plan;

    d. violation of KY. REV. STAT. § 337.385 based on VSI's failure to pay severance benefits pursuant to the Employment Agreement disability benefits pursuant to the Plan; and

    e. violation of KY. REV. STAT. § 311.560 for the unlawful practice of medicine without a license

   ii. against Lincoln

    a. tortious interference with contract based on Lincoln's recommendation that VSI breach its contract to pay disability benefits pursuant to the Plan;

    b. violation of KY. REV. STAT. § 311.560 for the unlawful practice of medicine without a license

    c. violation of KY. REV. STAT. § 304.12-230 for failure to fairly process Hackney's claim for disability benefits.

On May 17, 2013, Lincoln filed a motion to dismiss or, in the alternative, a motion for summary judgment (DN 81). In support of its motion, Lincoln attached several exhibits, including copies of the Advice to Pay Agreement, the Plan, Hackney's deposition testimony, and an affidavit. In his response brief (DN 90), Hackney objected to Lincoln's reliance on these exhibits, arguing that Lincoln's motion constituted a motion to dismiss and therefore could not properly rely on matters outside the pleadings.[3] Apparently refusing to acknowledge Lincoln's exhibits, Hackney's response brief addresses Lincoln's motion as if it were solely a motion to dismiss.

---

judge restricted the scope of Hackney's depositions such that the only proper subject of questioning related to Hackney's short-term disability benefits. (DN 59).

  Despite the magistrate judge's ruling, Hackney subsequently moved to expand discovery (DN 78) in order to allow inquiry into the subjects forbidden by the protective order. After the magistrate judge denied the motion for expanded discovery on the grounds that "[t]he discovery requested by the plaintiff has already been the subject of prior motion practice and orders by the court," (DN 97), Hackney moved for reconsideration (DN 101).

[3] In addition, Hackney filed a motion to strike the exhibits (DN 92) relied on by Lincoln in support of its motion to dismiss.

On September 16, 2013, VSI filed a motion for summary judgment (DN 107) arguing that its refusal to pay Hackney severance and disability benefits was justified by the terms of the Agreement and the Plan and therefore did not amount to a breach of contract.

Having considered the parties' briefs and being otherwise sufficiently advised, the Court will now address the motions submitted for decision.

**STANDARD**

**i. Motion for Reconsideration**

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Although the Federal Rules of Civil Procedure do not expressly provide for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *See, e.g.*, *Moody v. Pepsi–Cola Metro. Bottling Co.*, 915 F.2d 201, 206 (6th Cir. 1990).

A Rule 59(e) motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). Accordingly, the Sixth Circuit has held that a motion for reconsideration may only be granted on the following grounds: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Leisure Caviar, LLC v.*

*U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

**ii. Motion for Summary Judgment**

Before granting a motion for summary judgment, the Court must find that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), a burden which may only be satisfied by "citing to particular parts of materials in the record..." or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). If the moving party satisfies this burden, the burden of production shifts to the non-moving party, who must then identify evidence demonstrating the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322.

In resolving a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party fails to satisfy its burden of counterproduction, the court must grant the motion for summary judgment.

## DISCUSSION

**i. Motion to Strike Exhibits and Memorandum**

The Court will begin by addressing Hackney's Motion to Strike Exhibits and Memorandum (DN 92) . Hackney has moved to strike all exhibits submitted by Lincoln in connection with its motion to dismiss or, in the alternative, motion for summary judgment, as well as any related discussion in its accompanying memorandum in support (DN 81). According to Hackney, these exhibits are not properly considerable to the extent a motion to dismiss should concern only the legal sufficiency of the plaintiff's complaint. In response, Lincoln argues that, because its motion is styled as a motion for summary judgment in the alternative, the Court should treat its motion as a motion for summary judgment under Federal Rule of Civil Procedure 12(d), thereby making the exhibits properly considerable.

After careful review, the Court concludes that Lincoln's motion must be treated as a motion for summary judgment. To begin with, Lincoln clearly styled its motion as a motion for summary judgment in the alternative, and this fact alone justifies its reliance on matters outside the pleadings. Moreover, even had Lincoln not styled its motion as one for summary judgment, Rule 12(d) requires that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Accordingly, the Court will treat Lincoln's motion as a motion for summary judgment, and will therefore deny Hackney's Motion to Strike Exhibits and Memorandum.

## ii. Motion for Reconsideration

The Court will next address Hackney's Motion for Reconsideration of the magistrate judge's order (DN 97) denying his previous Motion for Discovery (DN 78). In the order, the magistrate judge denied Hackney's Motion for Discovery on the grounds that "[t]he discovery requested by the plaintiff has already been the subject of prior motion practice and orders by the

court." (DN 97). Specifically, the magistrate judge had previously denied Hackney's requested

discovery in connection with his ruling on Lincoln's Motion to Expedite Protective Order (DN

50), wherein he "respectfully disagree[d]" with "Hackney's argument that information about

how VSI's handling of workers compensation and long term disability claims might lead to

information relevant to the issue of whether VSI improperly deemed… Hackney to have

abandoned his employment." (Order, DN 54, at 2). As explained by the magistrate judge:

> Hackney's Amended Complaint consists of several claims of breach of contract,
> plus some related claims of statutory violations and one allegation of tortious
> interference with a contract allegedly breached. None of these claims allege any
> improper denial of workers compensation or long term disability benefits, nor
> would any evidence of whether an award of workers compensation or long term
> disability benefits be admissible as evidence in the trial of this action.
> Accordingly, the court cannot agree that deposition questions or document
> production requests regarding those issues "appear[] reasonably calculated to lead
> to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

(Order, DN 54, at 2).

In his Motion for Reconsideration, Hackney does not present any novel arguments

supporting his request for discovery, but instead merely reiterates arguments previously

advanced in response to Lincoln's Motion to Expedite Protective Order. Because motions

for reconsideration should not be used either to reargue a case on the merits or to reargue

issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008)

(citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.

1998)), the Court concludes that there is no basis for disturbing the magistrate judge's

order. Accordingly, the Court will deny the motion for reconsideration.

### iii. Lincoln's Motion for Summary Judgment

The Court will next address Lincoln's Motion for Summary Judgment (DN 81). Because

Hackney's response brief addresses Lincoln's motion as if it were a motion to dismiss, the Court

concludes that Hackney must be granted additional time to properly respond to Lincoln's Motion for Summary Judgment. Federal Rule of Civil Procedure 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> > (2) consider the fact undisputed for purposes of the motion;
> > (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> > (4) issue any other appropriate order.

Here, Hackney's response brief wholly fails to address the assertions of fact made in Lincoln's Motion for Summary Judgment. Because the Court believes it would be improper to adjudicate the motion for summary judgment without first allowing Hackney an opportunity to fully respond, the Court will hold the motion for summary judgment in abeyance until receipt of Hackney's response.

### iv. Hackney's Motion to File Surreply

The Court will next address Hackney's Motion to file a Surreply (DN 102) to Lincoln's Motion for Summary Judgment. Because the tendered surreply does nothing more than further respond to Lincoln's Motion for Summary Judgment and discuss discovery issues which have been resolved by our disposition of Hackney's Motion for Reconsideration, the Court will deny the motion for leave to file a surreply. Any remaining issues Hackney would like to bring to the Court's attention can be addressed in his response to Lincoln's Motion for Summary Judgment.

### v. VSI's Motion for Summary Judgment

The Court will finally address VSI's Motion for Summary Judgment (DN 107). Because VSI has moved for summary judgment with respect to all claims asserted by Hackney, the Court will address each claim in turn.

*a. Breach of contract based on VSI's alleged violation of the Employment Agreement*

VSI argues that summary judgment is warranted with respect to Hackney's claim that VSI breached the Agreement because there is no genuine dispute that its refusal to pay him severance benefits was justified under the terms of the Agreement. According to VSI, Hackney was not entitled to severance benefits because the Agreement specifically provides that termination based on "job abandonment" constitutes "Violating Conduct" for which severance benefits are not payable. While acknowledging that the term "job abandonment" is not specifically defined in the agreement, VSI contends that, based on the dictionary definition of the verb abandon as "to cease; to give up; or to withdraw from," Hackney's failure to return to work despite VSI's efforts to accommodate him amounted to "job abandonment" under the plain language of the Agreement.

In response, Hackney has advanced several arguments. First, Hackney argues that, because the job abandonment provision operates as a "contractual exclusion," the burden of establishing that he abandoned his job rests with VSI pursuant to *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 239 N.W.2d 768, 770 (Minn. 1976), and *Milwaukee Mut. Ins. Co. v. City of Minneapolis*, 239 N.W.2d. 472, 475 (Minn. 1976). In response, VSI argues that these cases are distinguishable insofar as they dealt only with exclusions contained in insurance contracts and therefore do not apply to ordinary employment contracts such as the Agreement. Because both cases relied on by Hackney were clearly restricted to the insurance context, the

Court concludes that the burden of establishing a breach of the Agreements rests with Hackney under general principles of contract law.

Second, Hackney advances a series of arguments aimed at discrediting VSI's proffered interpretation of the term "job abandonment." Beginning with the assumption that the term is unambiguous, Hackney argues that definition of the noun "abandonment," rather than the verb "to abandon," should be accorded greater weight in discerning its meaning. Citing Merriam-Webster's definition of "abandonment" as "to give up to the control or influence of another person or agent; to give up with the intent of never again claiming a right or interest; or to withdraw from," Hackney argues that the term "job abandonment" "implicitly requires an intentional act." (Response in Opp'n to Mot. for Summ. J., DN 116, at 8). Because his disability was the only reason he did not return to work, Hackney contends that he did not intentionally withdraw from employment and therefore did not abandon his job.

In the event the Court refuses to accept his definition of the term "job abandonment," Hackney argues in the alternative that the term is ambiguous insofar as it is "subject to two or more meanings." (Response to Mot. for Summ. J., DN 116, at 9). Citing *Hillgoss v. Cargill, Inc.*, 649 N.W.2d 142, 146 (Minn. 2002), for the proposition that ambiguous contract terms must be construed against the drafter of the contract, Hackney argues that any ambiguity regarding the meaning of the term "job abandonment" must be strictly construed against VSI. According to Hackney, such a construction would require that the term be interpreted as including an intentional element such that Hackney must have voluntarily withdrawn from his employment with the subjective intention of never returning.

In response, VSI argues that the term "job abandonment" is not ambiguous to the extent its plain and ordinary meaning is reflected in Merriam-Webster's definition of the term as "to

cease; to give up; or to withdraw from." Furthermore, assuming *arguendo* that the term is reasonably susceptible to more than one interpretation, VSI argues that the correct interpretation thereof is a question of law to be resolved by the Court.

After careful review, the Court concludes that the term "job abandonment" as used in the Agreement is unambiguous. Under the definition of either the verb "to abandon" or the noun "abandonment," the plain and ordinary meaning of the term may be expressed as "to give up" or "to withdraw from" employment. While Hackney is correct that this meaning connotes intentionality, the Court disagrees that his refusal to return to work did not amount to an intentional withdrawal from his employment. Throughout his period of disability, VSI made every effort to accommodate Hackney in order that he could continue to work for them. On December 21 and December 28, 2012, VSI sent Hackney letters explaining that his FMLA leave had been exhausted and requesting that he inform them of his intended return-to-work date. (Hackney Dep. Exhibits 29–30, DN 121). In both letters, VSI informed Hackney that his response must be received no later than January 31, 2011, or else his employment would be terminated. (Hackney Dep. Exhibits 29–30, DN 121). When Hackney finally responded through counsel on January 18, 2011, he acknowledged receipt of VSI's letters but nevertheless indicated that he would not be returning to work on account of his continued disability. (Hackney Dep. Exhibit 31, DN 121). Even though Hackney's FMLA leave had been exhausted, VSI agreed via letter dated February 18, 2011, to a further extension of his leave until April 21, 2011, clearly stating that "[t]his is the final extension of leave that will be granted." (DN 121 at 29). On April 21, 2011, despite having full knowledge of the consequences of his decision, Hackney voluntarily refused to return to work. Based on the plain meaning of the term "job abandonment" as it is used in the Agreement, the Court must conclude that Hackney abandoned his job by

voluntarily refusing to return to work. Because the Agreement specifically provided that severance benefits were not payable in the event of job abandonment, the Court will grant the motion for summary judgment with respect to Hackney's claim for severance benefits.

*b. Breach of contract based on VSI's alleged violation of the Plan*

VSI next argues that summary judgment is warranted with respect to Hackney's breach of contract claim based on VSI's alleged violation of the Plan because: 1) the Plan does not constitute a contract; and 2) even if the Plan constitutes a contract, VSI's refusal to pay Hackney disability benefits did not amount to a violation thereof.

In support of its argument that the Plan does not constitute a contract, VSI cites several cases holding that, where an employer pays disability benefits with its general assets and does not charge its employees via salary deductions or premiums, the employer's disability benefits are not considered a contractual right upon which a breach of contract claim may be based. In response, Hackney argues that the Plan must be deemed a contract because it was incorporated into the Agreement via Section 4(e)'s provision that "Employee will be entitled to participate in benefit plans, which may be established by the Board of Directors of the Company for the employees of [VSI] generally. Other than as specified in this Agreement, Employee shall not have any entitlement to any benefits." (Employment Agreement, DN 116-2, at 2). Because the Agreement expressly references his entitlement to benefits, Hackney argues that the terms of the Plan were clearly incorporated into the Agreement. Furthermore, because this provision appears under the heading "Compensation," Hackney argues that his continued employment constituted consideration sufficient to render the Plan a contract.

After careful review, the Court concludes that the Plan constituted a contract upon which Hackney's breach of contract claim may properly be based. Although VSI is correct that

Hackney did not directly pay for the benefits via either premiums or salary deductions, it does not necessarily follow that the Plan does not constitute a contract for want of consideration. To the contrary, given the fact that the benefits provision appears in the "Compensation" section of the Agreement, the necessary consideration for Hackney's benefits appears to be his continued employment with VSI. Moreover, contrary to VSI's suggestion, the Plan's disclaimer that "Neither the benefit nor this policy is a contract of employment" does not alter this conclusion. Indeed, this language does nothing more than state the obvious fact that the Agreement, rather than the Plan, governs the terms of his employment. Accordingly, the Court concludes that the Plan constitutes a contract upon which Hackney's breach of contract claim may be based.

Having determined that the Plan constitutes a contract, the question becomes whether VSI's refusal to pay Hackney disability benefits amounts to a breach thereof. According to VSI, summary judgment is warranted because there is no genuine dispute that it did not breach the Plan insofar as it merely adopted Lincoln's determination that Hackney did not qualify as "Totally Disabled" within the meaning of the Plan. In response, Hackney argues that summary judgment is inappropriate because he did in fact qualify as Totally Disabled and complied with all necessary requirements for receiving his disability benefits.

According to the terms of the Plan, an employee is entitled to receive disability benefits if he is "Totally Disabled" such that he can no longer perform the "main duties of [his] regular occupation… due to sickness or injury…" (Salary Continuation Plan, DN 116-4, at 8). Once an employee is determined to be Totally Disabled, he is entitled to continue receiving disability benefits until he is no longer Totally Disabled or fails to furnish proof that he continues to be Totally Disabled. (Salary Continuation Plan, DN 116-4, at 4).[4] Thus, in order to demonstrate as a

---

[4] In reality, there are several other circumstances under which benefit payments might terminate. Specifically, the Plan provides that:

matter of law that it did not breach the Plan, VSI bears the burden of establishing the absence of

a genuine dispute that, at the time it denied him disability benefits, Hackney either: 1) was able

to perform the main duties of his regular occupation; or 2) had failed to furnish adequate proof

that he remained Totally Disabled. In attempting to do so, VSI cites: 1) a November 10, 2010,

letter to Hackney from Lincoln explaining that his request for an extension of his disability

benefits had been denied due to his failure to submit adequate medical documentation that he

remained disabled (DN 121 at 22–23); and 2) a March 31, 2011, letter to Hackney from Lincoln

explaining its decision to deny Hackney's appeal (DN 121 at 35–39). In these letters, Lincoln

details the medical evidence submitted by Hackney in support of his request for extended

benefits and explains its conclusion that "the medical documentation… does not provide

evidence of functional limitation for a sedentary occupation." (DN 121 at 38). Specifically, the

March 31, 2011, letter states:

> It would appear that [Hackney's] restrictions… include prolonged standing,
> walking, climbing, pushing/pulling, bending and lifting. As these would not be
> necessary functions of… Hackney's occupation, we do not find that… there are
> restrictions and limitations that would render him unable to perform his own
> occupation as of November 3, 2010, and we therefore find that your client was not
> Totally Disabled under the terms of our policy as of November 3, 2010.

(DN 121 at 38–39).

---

Benefit Payments will stop on the first to occur of:
- The date you cease to be eligible for coverage or cease to be in a class eligible for coverage;
- The date you are no longer disabled;
- The date you fail to furnish proof that you continue to be disabled;
- The date your employment ends;
- The date you die;
- The dare this Salary Continuation policy is terminated or amended so that you lose coverage;
- The date the Maximum Benefit Period ends.

However, because VSI relies exclusively on the provision that benefit payments cease upon no longer being disabled or failing to furnish adequate proof of disability, the Court's opinion addresses only these possibilities.

In his response brief, Hackney advances several arguments in support of his claim that VSI's denial of his benefits was improper, yet wholly fails to address VSI's claim that he failed to provide adequate medical documentation. Because the Plan clearly provides that disability benefits "will stop on… the date you fail to furnish proof that you continue to be disabled," (DN XXX, at 4), Hackney's failure to rebut VSI's claim that he failed to provide adequate medical documentation is itself sufficient to warrant summary judgment on his breach of contract claim based on VSI's alleged violation of the Plan.

*c. Breach of implied covenant of good faith and fair dealing*

VSI next argues that summary judgment is warranted with respect to Hackney's claim that VSI breached its implied covenants of good faith and fair dealing with respect to both the Agreement and the Plan. As for the Agreement, VSI argues that it cannot be deemed to have breached its covenant of good faith and fair dealing because its denial of Hackney's claim for severance benefits was justified under the terms of the contract. Citing *Hunt Enterprises, Inc. v. John Deere Indus. Equip. Co.*, 162 F.3d 1161 (6th Cir. 1998), for the proposition that the exercise of contractual rights does not constitute a breach of the covenant of good faith and fair dealing, VSI argues that its denial of severance benefits based on job abandonment was warranted under the terms of the Agreement and therefore cannot amount to a breach of the covenant of good faith and fair dealing.

In response, Hackney argues that, because he did not abandon his job within the meaning of the Agreement, VSI's refusal to pay his severance benefits was improper and thus went beyond the mere exercise of a contractual right. Accordingly, Hackney argues that VSI breached its covenant of good faith and fair dealing by denying him "the benefit of the bargain originally intended by the parties." (Resp. to Mot. for Summ. J., DN 116, at 16–17).

Having already concluded that Hackney abandoned his job within the meaning of the Agreement, the Court disagrees that VSI's refusal to pay him severance benefits amounted to a denial of the benefit of the bargain originally intended by the parties. Thus, far from breaching its covenant of good faith and fair dealing, VSI did nothing more than exercise its contractual right to deny severance based on job abandonment. Accordingly, the Court concludes that summary judgment is warranted on Hackney's claim that VSI breach its implied covenant of good faith and fair dealing with respect to the Agreement.

As for the Plan, VSI first argues that, because the Plan does not constitute a contract, there was no implied covenant of good faith and fair dealing that could have been breached. However, given our previous conclusion that the Plan constitutes a contract, the Court will not address this argument. Assuming *arguendo* that the Plan constitutes a contract, VSI next argues that it did not breach its implied covenant of good faith and fair dealing because its denial of disability benefits was justified insofar as Hackney was not "Totally Disabled" within the meaning of the Plan. In response, Hackney argues that VSI's denial was improper because he did in fact qualify as "Totally Disabled" and complied with all necessary requirements for receiving disability benefits.

Based on our previous conclusion that Hackney failed to provide adequate proof that he remained "Totally Disabled," the Court concludes that VSI acted within its contractual rights by refusing to extend Hackney's disability benefits. Accordingly, the Court will grant the motion for summary judgment on Hackney's claim that VSI breached its covenant of good faith and fair dealing with respect to the Plan.

*d. Violation of KY. REV. STAT. § 337.385*

VSI next argues that summary judgment is warranted with respect to Hackney's claim that he is entitled to unpaid wages under KY. REV. STAT. § 337.385 as a result of VSI's failure to pay him severance and disability benefits. According to VSI, Hackney cannot recover unpaid wages under KY. REV. STAT. § 337.385 because he is a *bona fide* "administrative" or "highly compensated" employee exempt from the definition of "employee" under KY. REV. STAT. § 337.010(2)(a). Having conceded in his response brief that he falls within these definitions, Hackney's sole remaining argument is that he should nevertheless be allowed to recover unpaid wages because "context requires otherwise" within the meaning of KY. REV. STAT. § 337.010(2).

In support of his argument that "context requires" that he not be exempted from the definition of employee under KY. REV. STAT. § 337.010(2)(a), Hackney cites *Healthcare of Louisville v. Kiesel*, 715 S.W.2d 246 (Ky.App. 1986). In *Kiesel*, the plaintiff sued his employer for severance pay, vacation pay, and pay for personal days that he had been promised in exchange for his resignation. *Id.* at 247. After a bench trial, the plaintiff was awarded "damages, attorney fees, and costs pursuant to KRS 337.385." *Id.* On appeal, his employer argued that he "was not an employee for the purposes of KRS 337.385 and, therefore, was not entitled to recover any damages." *Id.* at 247–48. Ultimately, the Kentucky Court of Appeals rejected this argument, explaining that:

> The trial court considered this issue twice and twice determined that Dr. Kiesel was nevertheless entitled to recover and in so doing the court reasoned that in this case the context 'requires otherwise.' The trial court stated that 'it is just as unlawful to fail to pay or to withhold a part of the salary of an executive, administrative, supervisory or professional employee as it would be to do so in the case of any other type of employee.' We agree with the trial court and affirm its holding that Dr. Kiesel was an employee and thus entitled to recovery under this statute.

*Id.*

While *Kiesel* thus stands for the proposition that certain circumstances warrant treating an otherwise exempt person as falling within Ky. Rev. Stat. § 337.010(2)(a)'s definition of "employee," there remains considerable debate regarding precisely which circumstances so warrant. Faced with this conundrum, the court in *Fox v. Lovas*, 2012 WL 1567215 (W.D. Ky. May 1, 2012), summarized the uncertainty surrounding *Kiesel* as follows:

> *Healthcare of Louisville v. Kiesel* is the only case in which an individual who was not an "employee" under the KWHA recovered damages because the "context require[d] otherwise." … The court… offered no explanation why the context of his case entitled him to recover damages under KRS § 337.385. The opinion reveals no insight into why the court deviated from the terms of the statute. Another court of the Western District of Kentucky has theorized that Dr. Kiesel was able to recover damages under the KWHA because "it is plausible that the court in Kiesel believed that the medical director's position was more akin to that of a subordinate employee than a supervisor or doctor engaged in professional activities." *Whitewood v. Robert Bosch Tool Corp. (Whitewood I)*, Civil Action No. 3:04–CV–631–H, 2006 WL 2873426 (W.D. Ky. Oct.3, 2006), *aff'd in part by* 323 Fed. Appx. 397 (6th Cir. 2009). Whatever the case may be, the Kentucky Court of Appeals did not explain its decision in *Kiesel* beyond agreeing with the trial court that the "context require[d] otherwise."
>
> No court since *Kiesel* has accepted the argument that, even though a plaintiff is not an "employee" as used in KRS 337.385, he is entitled to damages under the statute because the "context requires otherwise." In fact, … courts have uniformly held that that the facts in front of them were not situations in which the "context requires otherwise."

*Id.* at *3–4. Ultimately, the court turned to the Sixth Circuit's decision in *Whitewood v. Robert Bosch Tool Corp. (Whitewood II)*, 323 Fed. Appx. 397, 402 (6th Cir. 2009), for guidance. In *Whitewood II*, the Sixth held that the "requires otherwise" language of Ky. Rev. Stat. § 337.010 is applicable only "when the context and equities of a *particular case* require that an employee be entitled to the remedies set forth in § 337.385." *Id.* at 402. While it relied exclusively on *Whitewood II*'s interpretation, the court made clear that "The context or equities requiring deviation from the definition of 'employee' in KRS § 337.101(2)(a)(2) cannot logically turn on the type of exempt employee involved." *Lovas*, 2012 WL 1567215, at *5. Instead, the court

stated that "There must be something outside of the particular type of employment or damages sought that could 'otherwise require' a court to find that an exempt employee should recover damages under KRS § 337.385." *Id.*

Based on this reading of *Kiesel*, it is clear that Hackney cannot be deemed an "employee" under KY. REV. STAT. § 337.010(2)(a). Indeed, Hackney's only argument in support of his claim that "context requires otherwise" consists of the following:

> He is not seeking payment for overtime compensation, nor is he seeking to recover based upon a minimum wage argument – the type of wage claims subject to the exempt employee definition. Mr. Hackney is instead seeking, as Dr. Kiesel, to receive compensation promised to him but not paid. Mr. Hackney is also seeking to recover promised but unpaid severance benefits. Applying the Kentucky Court of Appeals decision in *Kiesel*, Mr. Hackney has a valid claim under KRS 337.385—he has a remedy.

(Resp. to Mot. for Summ. J., DN 116, at 26–27). Because "There must be something outside of the particular type of employment or damages sought that could 'otherwise require' a court to find that an exempt employee should recover damages under KRS § 337.385," the Court concludes that Hackney's reliance on the type of damages he is seeking to recover is insufficient to demonstrate that "context requires" him to be deemed an employee under KY. REV. STAT. § 337.010(2)(a). Accordingly, the Court concludes that context does not require otherwise, and that Hackney is therefore exempt from the definition of "employee" under KY. REV. STAT. § 337.010(2)(a).

Hackney next argues that, even if he cannot recover under KY. REV. STAT. § 337.385, he may nevertheless pursue his claim for unpaid wages under KY. REV. STAT. § 446.070. However, as pointed out by VSI in its reply brief, Hackney's Complaint does not assert a claim under KY. REV. STAT. § 446.070. Accordingly, the Court will not address his argument that he can pursue his claim for unpaid wages under KY. REV. STAT. § 446.070.

For these reasons, the Court will grant the motion for summary judgment with respect to Hackney's claim for unpaid wages.

*e. Unlawful practice of medicine without a license in violation of KY. REV. STAT. § 311.560*

VSI finally argues that summary judgment is warranted with respect to Hackney's claim that it unlawfully practiced medicine without a license. While conceding that Lincoln consulted non-licensed medical professionals in arriving at its decision to deny Hackney's claim for disability benefits, VSI maintains that such consultation did not amount to the "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any… means, methods, devices, or instrumentalities" under KY. REV. STAT. § 511.550.

In response, Hackney cites two opinions issued by the Kentucky State Board of Medical Licensure (the "Board") which he claims held that medical professionals conducting peer reviews for insurance companies are practicing medicine within the meaning of KY. REV. STAT. § 311.560(1). However, as pointed out by VSI, these opinions both dealt with medical professionals rendering judgments regarding whether treatment was medically necessary such that it was covered by the insured's policy. Because these judgments actually affected the treatment ultimately received by the insured, VSI argues that these cases are distinguishable from the case at bar insofar as the medical professionals consulted regarding Hackney's condition merely expressed their opinion regarding the effect of his condition on his ability to work, as opposed to the medical necessity of the treatment he received.

After reviewing the Board opinions relied on by Hackney, the Court agrees with VSI that they are distinguishable from the case at bar. In both cases, the review conducted by the non-licensed physician either actually resulted in or could have potentially resulted in a material

change to the treatment ultimately received by the insured as a result of the physician's determination regarding the medical necessity of a proposed treatment plan. *See* (Moss Opinion, DN 116-10, at 1–3); (Peer Review Opinion, DN 122-6, at 5–6). As demonstrated by email correspondence between the Board and the Federation of State Medical Board (the "Federation"), the Board's conclusion in the Peer Review Opinion that "anyone performing or submitting peer reviews on Kentucky residents must be licensed to practice medicine or osteopathy within the Commonwealth," (DN 122-6, at 1), was based largely on the Federation's certification that a majority of state medical licensing boards require that physicians rendering opinions regarding the medical necessity of an insured's treatment must be licensed to practice medicine within the state. In contract to these cases, the unlicensed medical personnel who reviewed Hackney's medical records determined only that his condition did not prevent him from performing the necessary functions of his occupation, and therefore did not express any opinion regarding the medical necessity of any proposed treatment plan. Because this type of review clearly does not fall within the gamut of the Board opinions relied upon by Hackney, the Court concludes that they are inapposite and thus do not support Hackney's claim that VSI engaged in the unlawful practice of medicine without a license. Accordingly, the motion for summary judgment will be granted with respect to Hackney's claim that VSI engaged in the unlawful practice of medicine without a license in violation of KY. REV. STAT. § 311.560.

A separate order will be entered in accordance with this opinion.

**Charles R. Simpson III, Senior Judge**
**United States District Court**

May 30, 2014

24