UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES HACKNEY                                                                                          PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:12-CV-00170-CRS

LINCOLN NATIONAL LIFE                                                                               DEFENDANTS
INSURANCE COMPANY, ET AL.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Lincoln National Life Insurance Co.'s ("Lincoln") motion to dismiss or, in the alternative, for summary judgment (DN 81).  For the following reasons, the Court will grant summary judgment in favor of Lincoln.  Plaintiff James Hackney's Second Amended Complaint (DN 80) will be dismissed with prejudice.

**I.      BACKGROUND**

Defendant Vascular Solutions, Inc. ("VSI") developed and sold medical devices for use in coronary and peripheral vascular procedures.  Plaintiff worked for VSI as Director of Marketing—Catheters.  An Employment Agreement (DN 116-2) between Plaintiff and VSI governed the terms of the employment relationship.  Through that employment, Plaintiff participated in VSI's Salary Continuation Plan (DN 81-3), which provided short-term disability ("STD") benefits to eligible employees.  VSI paid all benefits under the Salary Continuation Plan out of its general assets.[1]

---

[1] Because VSI paid those benefits from its general assets, the parties agree that the Salary Continuation Plan qualifies as a "payroll practice" exempt from the requirements of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.  *See* 29 C.F.R. § 2510.3-1(b)(2).

The Salary Continuation Plan explicitly named Lincoln as its "claims administrator." (Salary Continuation Plan, DN 81-3, at 1.) Lincoln administered the Salary Continuation Plan according to a separate agreement with VSI, known as the Advice to Pay Agreement. (Advice to Pay Agreement, DN 81-2, at 1; Salary Continuation Plan, DN 81-3, at 1.) Lincoln evaluated any claim made under the Salary Continuation Plan and advised VSI as to whether the claimant was eligible for STD benefits. (Advice to Pay Agreement, DN 81-2, at 1; Salary Continuation Plan, DN 81-3, at 6–7.) Though Lincoln provided claim review services, VSI retained exclusive authority to approve or deny claims and appeals. (Advice to Pay Agreement, DN 81-2, at 1–2.) VSI held sole responsibility for the payment of any approved STD benefits. (Advice to Pay Agreement, DN 81-2, at 1; Salary Continuation Plan, DN 81-3, at 2.)

On October 6, 2010, Plaintiff informed VSI that he believed his condition of hypoparathyroidism had disabled him such that he could no longer perform the necessary functions of his job. Five days later, on October 11, Plaintiff filed a claim for benefits under the Salary Continuation Plan. After conducting a review, Lincoln recommended that VSI approve Plaintiff's claim for approximately four weeks of STD benefits. VSI adopted that recommendation, and Plaintiff was notified that STD benefits would be paid through November 2, 2010. For benefits beyond that date, Plaintiff was required to submit medical evidence to establish his continuing disability.

Plaintiff did not report to work of November 3, 2010, and instead sought an extension of his disability benefits under the Salary Continuation Plan. Lincoln evaluated Plaintiff's medical records and recommended that VSI deny additional STD benefits because the evidence submitted failed to show that Plaintiff remained totally disabled. VSI again adopted Lincoln's recommendation, denying additional benefits beyond November 2, 2010.

Plaintiff appealed VSI's denial of extended benefits, but the appeal failed. Lincoln advised VSI to affirm the denial of benefits, explaining that the claim was not supported by sufficient medical evidence. Once more, VSI agreed and denied the appeal on March 30, 2011.

VSI held Plaintiff's position open until April 20, 2011, but Plaintiff never returned to work. On April 21, 2011, VSI informed Plaintiff that his employment would be terminated effective May 12, 2011. VSI viewed Plaintiff's failure to resume work as job abandonment.

On March 6, 2012, Plaintiff commenced this action in Jefferson County Circuit Court. (Compl., DN 1-1.) VSI and Lincoln removed the case to this Court, basing subject matter jurisdiction solely on diversity of citizenship. (Notice of Removal, DN 1.) Plaintiff asserts three claims against Lincoln: (1) tortious interference with contract; (2) negligence per se based on violation of Kentucky's medical licensing statute, KRS 311.560; and (3) violation of the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230. (Second Am. Compl., DN 80, Cls. F–H.) On May 17, 2013, Lincoln moved to dismiss or, in the alternative, for summary judgment on each of those claims (DN 81). The Court later determined that Lincoln's motion was more appropriately resolved as one for summary judgment and allowed additional time for the parties to complete discovery. (Mem. Op., May 30, 2014, DN 123, at 10–11; Order, May 30, 2014, DN 124; Mem. Op., Aug. 13, 2014, DN 132, at 7; Order, Aug. 13, 2014, DN 133.) Lincoln's motion for summary judgment is now fully briefed and ripe for decision.

The Court previously granted summary judgment in favor of VSI on all claims asserted against it. (Mem. Op., May 30, 2014, DN 123, at 12–24; Order, May 30, 2014, DN 124.) In doing so, the Court reached several conclusions on issues central to Lincoln's pending motion. Those prior conclusions will be addressed throughout the legal discussion.

## II. STANDARD

The Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of explaining the basis of its motion and demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). That burden may be satisfied only by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Should the movant meet its burden, the nonmoving party may not simply rest on its prior pleadings; it must produce further evidence showing a genuine issue for trial. *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Even so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . . ." *Id.* at 252.

## III. DISCUSSION

As a preliminary matter, Plaintiff renews his objections to several orders limiting discovery issued by the magistrate judge. The Court examined those objections in ruling on

Plaintiff's prior motion for reconsideration but concluded that there was no basis for disturbing the magistrate judge's orders. (Mem. Op., May 30, 2014, DN 123, at 9–10.) The Court afforded Plaintiff ample opportunity to conduct discovery, and it is therefore the proper time to resolve Lincoln's motion for summary judgment.

### A. Tortious Interference with Contract

The Court will first address the claim that Lincoln committed tortious interference with the contractual relations between Plaintiff and VSI. To succeed on his claim of tortious interference with contract, Plaintiff must established the following elements: (1) the existence of a contract between Plaintiff and VSI, (2) Lincoln's knowledge of the contract, (3) that Lincoln intended to cause VSI to breach the contract, (4) that Lincoln's conduct did indeed cause VSI's breach, (5) that damages resulted to Plaintiff, and (6) that Lincoln had no privilege or justification to excuse its conduct. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. App. 2012) (citing *Ventas, Inc. v. Health Care Prop. Investors, Inc.*, 635 F. Supp. 2d 612, 618–19 (W.D. Ky. 2009)).

Two independent grounds now entitle Lincoln to summary judgment on the claim for tortious interference with contract. First, the Court's prior conclusions demonstrate that Plaintiff's claim lacks the critical element of an underlying breach. Plaintiff's breach of contract claims against VSI did not survive summary judgment. (Mem. Op., May 30, 2014, DN 123, at 12–18; Order, May 30, 2014, DN 123.) The Court concluded that VSI's refusal to pay severance benefits did not breach the Employment Agreement. (Mem. Op., May 30, 2014, DN 123, at 14–15.) Plaintiff's failure to return to work by the specific deadline amounted to "job abandonment" and relieved VSI of its obligation to pay severance benefits. (Mem. Op., May 30, 2014, DN 123, at 14–15.) The Court also concluded that VSI's refusal to pay disability benefits did not breach

the Salary Continuation Plan as Plaintiff failed to furnish adequate proof of his continuing disability. (Mem. Op., May 30, 2014, DN 123, 17–18.) Because VSI committed no breach of the Employment Agreement or Salary Continuation Plan, Plaintiff cannot show that Lincoln's conduct caused such a breach. *See Ventas*, 635 F. Supp. 2d at 619. Plaintiff's claim for tortious interference with contract fails on that basis alone.

Second, Lincoln is not liable for tortious interference with contract because it acted as VSI's agent in recommending the denial of disability benefits. The agent of a party to a contract acting within the scope of the agency relationship cannot interfere with that party's contract. *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. App. 2011) (citing *Carmichael-Lynch-Nolan Adver. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. App. 1977)). Lincoln recommended the denial of Plaintiff's claim in its capacity as administrator of VSI's Salary Continuation Plan. As outlined above, the terms of the Salary Continuation Plan and Advice to Pay Agreement plainly provided authority for Lincoln to evaluate and make recommendations regarding the claims of VSI's employees.

Plaintiff counters by directing the Court to *Rawlings v. Breit*, which stands for the proposition that an agent acting in its own interest may be liable for tortious interference with its principal's contract. Nos. 2003-CA-002785-MR, 2004-CA-000017-MR, 2004-CA-000030, 2005 WL 1415356, at *2–3 (Ky. App. June 17, 2005). Plaintiff argues that Lincoln recommended the denial of his claim under the Salary Continuation Plan to avoid future liability for long-term disability ("LTD") benefits. But this argument lacks sufficient evidentiary support. Plaintiff cites only the allegations in his Second Amended Complaint to advance his contention. (Pl.'s Supplemental Resp., DN 149, at 21–23.) The materials in the record, however, indicate that Lincoln's review processes for STD and LTD claims occur separately and do not impact

each other. (Olsen Decl., DN 81-6, ¶¶ 7–10; Olsen Dep., DN 152–3, at 33–35, 39.) The inference that Lincoln acted in its own interest in recommending the denial of Plaintiff's claim under the Salary Continuation Plan cannot be reasonably drawn from the evidence here. Accordingly, the Court will grant summary judgment in favor of Lincoln on Plaintiff's claim for tortious interference with contract.

### B. Unlicensed Practice of Medicine

Next, Lincoln requests summary judgment on Plaintiff's claim that Lincoln committed negligence per se by engaging in the unlicensed practice of medicine in violation of KRS 311.560. KRS 311.560(1) provides, in pertinent part, that "no person shall engage or attempt to engage in the practice of medicine or osteopathy within this state . . . unless the person holds a valid and effective license or permit issued by the board as hereinafter provided." The statute defines the "practice of medicine or osteopathy" as "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any and all means, methods, devices, or instrumentalities." KRS 311.550(10).

Plaintiff argues that Lincoln violated KRS 311.560 by using individuals, who are not licensed to practice medicine in Kentucky, to review and recommend the denial of his claim under the Salary Continuation Plan. The Court, however, granted summary judgment to VSI on an identical claim, which was also premised on Lincoln's use of claim reviewers. (Mem. Op., May 30, 2014, DN 123, at 23–24.) Plaintiff's attempt to impose liability on Lincoln for unlicensed medical practice fails for the same reasons. Neither Lincoln nor its claim reviewers engaged in the practice of medicine in violation of KRS 311.560 when they investigated Plaintiff's eligibility for STD benefits. *Anderson v. Standard Ins. Co.*, No. 3:14-CV-00051-H, 2014 WL 5366117, at *3 (W.D. Ky. Oct. 21, 2014) (citing *Hackney v. Lincoln Nat'l Life Ins.*

*Co.*, No. 3:12-CV-00170-CRS, 2014 WL 2440691, at *13–14 (W.D. Ky. May 30, 2014)). Lincoln's claim reviewers evaluated Plaintiff's medical records only to determine whether his condition left him disabled within the terms of the Salary Continuation Plan. Lincoln did not conduct that review process for the purpose of influencing the ultimate medical decisions or treatment plans of Plaintiff. This type of eligibility review does not fall within the meaning of the "practice of medicine or osteopathy" as used in KRS 311.560.[2] Therefore, Lincoln is entitled to summary judgment on Plaintiff's claim for negligence per se based on the unlicensed practice of medicine.

### C. Unfair Claims Settlement Practices

Finally, Lincoln seeks summary judgment on the claim that it violated the KUCSPA, KRS 304.12-230, in processing Plaintiff's request for disability benefits. Plaintiff offered no arguments to support that claim and instead filed a separate notice purporting to withdraw it. (Notice of Cl. Withdrawal, DN 91.) Plaintiff thus concedes his KUCSPA claim, and the Court will grant summary judgment in favor of Lincoln.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Lincoln's motion for summary judgment (DN 81). A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing Plaintiff's Second Amended Complaint (DN 80) with prejudice.

May 13, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[2] To support his argument, Plaintiff cites two opinions of the Kentucky Board of Medical Licensure (DN 149-13), but those opinions are distinguishable as they involved situations in which a material change in treatment resulted or could have resulted. (Mem. Op., May 30, 2014, DN 123, at 23–24.)